

PDK/FRAUD: USAO2025R00318

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PX-25-173** |
| | * | |
| **PM CONSULTING GROUP LLC** | * | |
| **D/B/A/ VISTANT,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | ****** | |

## DEFERRED PROSECUTION AGREEMENT

Defendant PM Consulting Group LLC d/b/a Vistant (the "Company"), pursuant to authority granted by the Company's Executive Manager, as referenced in Attachment B, and the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the United States Attorney's Office for the District of Maryland ("DMD") (collectively, the "Offices"), enter into this deferred prosecution agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

## Criminal Information and Acceptance of Responsibility

1.       The Company acknowledges and agrees that the Offices will file the attached two-count criminal Information (hereinafter the "Information") in the United States District Court for the District of Maryland charging the Company with Conspiracy to Commit Bribery of a Public Official, in violation of 18 U.S.C. §§ 371, 201, and Securities Fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5.   In so doing, the Company: (a) knowingly waives any right it may have to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section

1

3161, and Federal Rule of Criminal Procedure 48(b); (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Maryland; and (c) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement. Following the filing of the Information, the Offices agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate. The Company agrees that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, in connection therewith, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Guidelines"), or any other federal statute, rule, or other law that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form.

**Term of the Agreement**

3.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending three years from that date (the "Term").  The Company agrees, however, that, in the event the Offices determine, in their sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Offices, in their sole discretion, for up to a total additional time period of one year, without prejudice to the Offices' right to proceed as provided in Paragraphs 18 through 22 below.  Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment D, for an equivalent period.  Conversely, in the event the Offices find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in Attachment D, and that the other provisions of this Agreement have been satisfied, the Agreement may be terminated early.

**Relevant Considerations**

4.      The Offices enter into this Agreement based on the individual facts and circumstances presented by this case and the Company, including:

        a.      the nature and seriousness of the offense conduct, as described in the Statement of Facts attached hereto as Attachment A, including the Company's participation in a decade-long scheme to pay bribes and kickbacks to a U.S. government public official employed by the United States Agency for International Development ("USAID") in return for USAID contracts worth hundreds of millions of U.S. taxpayer dollars, as well as the Company's participation in a securities fraud scheme in which the illicitly obtained USAID contracts also

3

enabled the Company to sell artificially inflated stock for millions of dollars to a private equity company from whom the Company concealed the bribe scheme;

b.      the Company did not receive voluntary disclosure credit pursuant to the Criminal Division's Corporate Enforcement and Voluntary Self-Disclosure Policy ("Criminal Division CEP"), or pursuant to USSG § 8C2.5(g)(1), because it did not voluntarily and timely disclose to the Offices the conduct described in the Statement of Facts;

c.      the Company received credit pursuant to USSG § 8C2.5(g)(3) because it clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Company also received credit for its cooperation and remediation pursuant to the Criminal Division CEP.  Such cooperation included, among other things, conducting a thorough internal investigation, making regular factual presentations to the Offices, voluntarily making employees available for interviews, and collecting, analyzing, and organizing voluminous evidence and information for the Offices; however, after the Offices served a subpoena on the Company in August 2023, the Company's cooperation was delayed and limited by a conflict of interest that the Company did not resolve until November 2023, after which the Company began to fully cooperate;

d.      the Company provided to the Offices all relevant facts known to it, including information about the individuals involved in the conduct described in the Statement of Facts and conduct disclosed to the Offices prior to the Agreement;

e.      the Company also received credit pursuant to the Criminal Division CEP because the Company engaged in timely remedial measures, including: (i) transferring control from the Company owner and President involved in the misconduct to Vistant's then-Chairman of the Board who assumed the position of Chief Executive Officer in November 2023; (ii)

strengthening its anti-corruption compliance program by building and empowering an independent compliance function and investing in additional compliance resources; (iii) reviewing, enhancing, and testing its broader internal controls for pricing and other transactions; (iv) strengthening processes for vetting, engaging, and monitoring third parties, including implementing additional controls concerning payments to third parties; and (v) establishing risk assessment and audit processes to regularly review and update the compliance program and otherwise mitigate business risks. Therefore, the Offices determined that a discount of 5 percent off the bottom of the applicable Guidelines fine range was appropriate pursuant to the Criminal Division CEP based on the Company's cooperation and remediation;

      f.    the Company has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement (Corporate Compliance Program);

      g.    based on the Company's remediation and the state of its compliance program, and the Company's agreement to report to the Offices as set forth in Attachment D to this Agreement (Corporate Compliance Reporting), the Offices determined that an independent compliance monitor was unnecessary;

      h.    the Company has no prior criminal history;

      i.    the Company has no civil or regulatory enforcement matters unrelated to the conduct described in the Statement of Facts; the company is subject to a regulatory matter that USAID initiated in connection with the underlying bribery conspiracy in this case and which has resulted in the Company entering into an Administrative Agreement with USAID;

j.      the Company has agreed to continue to cooperate with the Offices in any ongoing investigation as described in Paragraphs 5 through 6;

k.      the Company has agreed to resolve concurrently a separate investigation by the U.S. Department of Justice, Civil Division, Fraud Section (the "Civil Division") and the United States Attorney's Office for the District of Columbia ("USAO-DC") and to pay a civil settlement amount of $100,000 relating, in part, to the conduct described in the Statement of Facts;

l.      the Company met its burden of establishing an inability to pay the criminal penalty sought by the Offices, despite agreeing that the proposed amount was otherwise appropriate based on the law and the facts. The Offices, with the assistance of a forensic accounting expert, conducted an independent ability to pay analysis, considering a range of factors outlined in the Justice Department's Inability to Pay Guidance (*see* October 8, 2019 Memorandum from Assistant Attorney General Brian Benczkowski to All Criminal Division Personnel re: Evaluating a Business Organization's Inability to Pay a Criminal Fine or Criminal Monetary Penalty), including but not limited to: (i) the factors outlined in 18 U.S.C. § 3572 and USSG § 8C3.3(b); (ii) the Company's current financial condition; (iii) the Company's alternative sources of capital; and (iv) the collateral consequences of the imposition of the full criminal penalty amount. Based on that independent analysis, the Offices determined that paying a criminal penalty and a civil settlement amount of greater than $100,000 would substantially threaten the continued viability of the Company; and

m.      accordingly, after considering (a) through (l) above, the Offices have determined that the appropriate resolution of this case is a deferred prosecution agreement and a payment of a civil settlement amount of $100,000 in the concurrent resolution with the Civil Division and USAO-DC due to the Company's inability to pay a criminal penalty.

## Ongoing Cooperation and Disclosure Requirements

5.      The Company shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Fraud Section. DMD, or any other component of the Department of Justice at any time during the Term until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.  At the request of the Offices, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Company, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Offices or any other component of the Department of Justice at any time during the Term.  The Company's cooperation pursuant to this Paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company must provide to the Offices a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Company bears the burden of establishing the validity of any such an assertion.  The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.      The Company represents that it has timely and truthfully disclosed all factual information with respect to its activities, those of its subsidiaries, and affiliates, and those of its present and former directors, officers, employees, agents, and consultants relating to the conduct described in this Agreement and the Statement of Facts, as well as any other conduct under investigation by the Offices at any time about which the Company has any knowledge. The

Company further agrees that it shall promptly and truthfully disclose all factual information with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants about which the Company shall gain any knowledge or about which the Offices may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Company including evidence that is responsive to any requests made prior to the execution of this Agreement.

b.      Upon request of the Offices, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Offices the information and materials described in Paragraph 5(a) above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

c.      The Company shall use its best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Offices pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable laws and regulations, to other governmental

authorities, including United States authorities and those of a foreign government of such materials as the Offices, in their sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5, during the Term, should the Company learn of any evidence or allegation of a violation of U.S. fraud and federal program bribery laws, the Company shall promptly report such evidence or allegation to the Offices.

### Payment of Monetary Penalty

7.      The Offices and the Company agree that application of the Guidelines to determine the applicable fine range yields the following analysis:

a.      <u>Offense Level for Conspiracy to Commit Bribery of a Public Official</u>. Based upon USSG §§ 2X1.1 and 2C1.1, the total offense level is 40, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base Offense Level | 12 |
| (b)(1) | Multiple Bribes | +2 |
| (b)(2) | Profit on performed contracts and intended profit on unawarded contracts between $25 million and $65 million | +22 |
| (b)(3) | High-level decision making or sensitive position | +4 |
| **TOTAL** | | 40 |

b.      <u>Offense Level for Securities Fraud</u>.  Based upon U.S.S.G. § 2B1.1, the total offense level is 33, calculated as follows:

| | | |
|---|---|---|
| (a)(1) | Base Offense Level | 7 |
| (b)(1)(K) | Loss between $9.5 million and $25 million | +20 |
| (b)(2)(A) | 10 or more victims | +2 |
| (b)(10)(C) | Sophisticated means | +2 |
| (b)(17)(A) | $1 million in gross receipts | +2 |

**TOTAL**                                                        33

    c.    <u>Combined Offense Level.</u>  The offenses do not group under the Guidelines.  Under USSG § 3D1.4, the combined offense level is 41.

    d.    <u>Base Fine</u>.  Based upon USSG § 8C2.4(a)(1), the base fine is $150,000,000 (the fine indicated in the Offense Level Fine Table)

    e.    <u>Culpability Score</u>.  Based upon USSG § 8C2.5, the culpability score is 6, calculated as follows:

    (a)    Base Culpability Score                                                5

    (b)(4)  the organization had 50 or more employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense                    +2

    (g)(3)  The organization clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct                    - 1

**TOTAL**                                                        6

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $150,000,000 |
| Multipliers | 1.20 (min) / 2.40 (max) |
| Fine Range | $180,000,000 / $360,000,000 |

8.    Pursuant USSG § 8C3.1(b), the minimum Guidelines fine ($180,000,000) is greater than the maximum fine authorized by 18 U.S.C. § 3571(d), which is $90,955,516.  Therefore, the maximum fine authorized by statute ($90,955,516) shall be the fine under the Guidelines.  Based on a 5% reduction off the Guidelines' fine ($90,955,516), the appropriate criminal penalty that would be payable under this Agreement is $86,407,740.20, subject to the Company's payment of a civil settlement amount of $100,000 to the Civil Division and USAO-DC and inability to pay a criminal fine as detailed in Paragraphs 9 and 10.

9.      Consistent with the Criminal Division's policy on Evaluating a Business Organization's Inability to Pay a Criminal Fine or Criminal Monetary Penalty, despite agreeing that a larger amount otherwise would be appropriate based on the law and the facts, the Company also made representations to the Offices that the Company has an inability to pay a criminal monetary penalty. Based on those representations, the Offices, with the assistance of a forensic accounting expert, conducted an independent inability-to-pay analysis, considering a range of factors outlined in the Justice Department's Inability to Pay Guidance (*see* October 8, 2019 Memorandum from Assistant Attorney General Brian Benczkowski to All Criminal Division Personnel re: Evaluating a Business Organization's Inability to Pay a Criminal Fine or Criminal Monetary 24 Penalty), including but not limited to: (i) the factors outlined in 18 U.S.C. § 3572 and the United States Sentencing Guidelines § 8C3.3(b); (ii) the Company's current financial condition; and (iii) the Company's alternative sources of capital. Based on that independent analysis, the Offices determined that paying a criminal penalty and a civil settlement amount of more than $100,000 would substantially threaten the continued viability of the Company.

10.     The Company has also agreed to pay a civil settlement amount of $100,000 to resolve concurrently a separate investigation by the Civil Division and USAO-DC relating, in part, to the conduct described in the Statement of Facts. Considering the foregoing, the Offices have determined that the payment of any criminal monetary penalty and a civil settlement amount in an amount exceeding $100,000 would substantially threaten the continued viability of the Company. Accordingly, in light of the Company's inability to pay more than $100,000 and its agreement to pay the Civil Division and USAO-DC a civil settlement amount of $100,000 in the concurrent resolution, the Offices agree not to seek a criminal penalty in this case. Nothing in this Agreement shall be deemed an agreement by the Offices that $100,000 is the maximum penalty that may be

11

imposed in any future prosecution, and the Offices are not precluded from arguing in any future prosecution that the Court should impose a higher fine.

## Conditional Release from Liability

11.     Subject to Paragraphs 18 through 22, the Offices agree, except as provided in this Agreement, including Paragraph 27, that they will not bring any criminal or civil case against the Company, or any of its affiliates or subsidiaries, relating to any of the conduct described in the Statement of Facts or the Information filed pursuant to this Agreement. The Offices, however, may use any information related to the conduct described in the Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

a.     This Agreement does not provide any protection against prosecution for any future conduct by the Company or its parent or any of their subsidiaries or affiliates.

b.     In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or its parent or any of its subsidiaries or affiliates.

## Corporate Compliance Program

12.     The Company represents that it has implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of U.S. fraud and federal program bribery laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with government officials; interacting with shareholders or companies providing financing or

equity purchases; or other activities carrying a high risk of corruption, including, but not limited to, the minimum elements set forth in Attachment C.

13.    In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement a review of its existing internal accounting controls, policies, and procedures regarding compliance with U.S. fraud and federal program bribery laws. Where necessary and appropriate, the Company agrees to adopt a new compliance program, or to modify its existing one, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) a rigorous anti-fraud and anti-bribery compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of U.S. fraud and federal program bribery laws.  The compliance program, including the internal accounting controls system will include, but not be limited to, the minimum elements set forth in Attachment C.

## Corporate Compliance Reporting

14.    The Company agrees that it will report to the Offices annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C.  These reports will be prepared in accordance with Attachment D.

15.    On the date the Term expires, the Company, by its Chief Executive Officer and Chief Compliance Officer, will certify to the Offices, in the form of executing the document attached as Attachment F to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement.  Each certification will be deemed a material statement and

representation by the Defendant to the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Deferred Prosecution

16.     In consideration of the undertakings agreed to by the Company herein, the Offices agree that any prosecution, except as provided in this Agreement, of the Company for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

17.     The Offices further agree that if the Company fully complies with all of its obligations under this Agreement, the Offices will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within six months after the Agreement's expiration, the Offices shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company based on the conduct described in this Agreement and the Statement of Facts.  If, however, the Offices determine during this six-month period that the Company breached the Agreement during the Term, as described in Paragraph 18, the Offices' ability to extend the Term, as described in Paragraph 3, or to pursue other remedies, including those described in Paragraphs 18 to 22, remains in full effect.

### Breach of the Agreement

18.     If, during the Term, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual

culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraphs 12 through 13 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of U.S. fraud and federal program bribery laws, would be a violation of U.S. fraud and federal program bribery laws; or (f) otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Offices in the U.S. District Court for the District of Maryland or any other appropriate venue.  Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Offices' sole discretion.  Any such prosecution may be premised on information provided by the Company or its personnel.  Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year.  Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year.  In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Offices are made aware of the violation or the duration of the Term plus

15

five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

19.    In the event the Offices determine that the Company has breached this Agreement, the Offices agree to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach.  Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Offices shall consider in determining whether to pursue prosecution of the Company.

20.    In the event that the Offices determine that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Offices or to the Court, including the Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Offices.

16

21.    The Company acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment.  The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

22.    On the date  the Term expires, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Offices in the form of executing the document attached as Attachment E to this Agreement that the Company has met its disclosure obligations pursuant to Paragraphs 5 and 6 of this Agreement.  Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form of Company

23.    Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  The purchaser or successor in interest must also agree in writing that the Offices' ability to determine a breach under this Agreement is applicable in full

17

force to that entity. The Company agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Company shall provide notice to the Offices at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Offices shall notify the Company prior to such transaction (or series of transactions) if they have determined that the transaction or transactions will have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Offices. If at any time during the Term the Company engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Offices may deem it a breach of this Agreement pursuant to Paragraphs 18-22 of this Agreement. Nothing herein shall restrict the Company from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Offices.

## Public Statements

24. The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the Statement of Facts. Any such contradictory statement shall, subject to the cure rights of the Company described below in this paragraph, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraph 1 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be

imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Offices. If the Offices determine that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Offices shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

25.     The Company agrees that if it or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Offices to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Offices and the Company; and (b) whether the Offices have any objection to the release.

26.     The Offices agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Offices are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

## Limitations on Binding Effect of Agreement

27.    This Agreement is binding on the Company and the Offices but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Offices will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company. If the court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

## Notice

28.    Any notice to the Offices under this Agreement shall be given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Lucy Jennings, Acting Deputy Chief, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue, Washington, D.C. 20005. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, with copies by electronic mail, addressed to George Washington, PM Consulting Group LLC d/b/a Vistant, 1300 Pennsylvania Avenue, N.W., Suite 350, Washington, D.C. 20004. Notice shall be effective upon actual receipt by the Offices or the Company.

**Complete Agreement**

29.    This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Offices.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Offices, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR PM Consulting Group d/b/a Vistant:**

Date: 06/12/2025                          By:  *George C. Washington*
                                                    George Washington
                                                    PM Consulting Group LLC d/b/a Vistant

Date:  6/12/2025                          By:  *Michelle Bradford*
                                                    Michelle Bradford
                                                    Barnes & Thornburg, LLP
                                                    Counsel for PM Consulting Group d/b/a
                                                    Vistant

**FOR THE DEPARTMENT OF JUSTICE:**

                                                    Lorinda I. Laryea
                                                    Acting Chief, Fraud Section
                                                    Criminal Division
                                                    United States Department of Justice

Date: June 12, 2025                       By:  _____
                                                    Matt Kahn
                                                    Brandon Burkart
                                                    Trial Attorneys

21

Kelly O. Hayes
United States Attorney
District of Maryland


Date: <u>June 12, 2025</u>              By: _____
                                      Patrick D. Kibbe
                                      Assistant United States Attorney

## CERTIFICATE OF COUNSEL

I am counsel for PM Consulting Group d/b/a Vistant (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Executive Manager. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Executive Manager of the Company. I have fully advised her of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of Executive Manager, is an informed and voluntary one.

Date:   6/12/2025

By: _Michelle Bradford_____
        Michelle Bradford
        Barnes & Thornburg, LLP
        Counsel for PM Consulting Group LLC d/b/a Vistant